LISA VOTTA                                    :
                                              :
          v.                                  :          C.A. No. 11-141M
                                              :
MICHAEL J. ASTRUE                             :
Commissioner of the Social Security           :
Administration                                :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner
of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits
("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint
on April 5, 2011 seeking to reverse the decision of the Commissioner.  On September 29, 2011,
Plaintiff filed a Motion for Order Reversing the Decision of the Commissioner.  (Document No. 8).
On February 3, 2012, the Commissioner filed a Motion for an Order Affirming the Commissioner's
Decision.  (Document No. 12).

        This matter has been referred to me for preliminary review, findings and recommended
disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'
submissions and independent legal research, I find that there is substantial evidence in this record
to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning
of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming
the Commissioner's Decision (Document No. 12) be GRANTED and that Plaintiff's Motion for
Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED.

# I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 17, 2005 alleging disability since October 30, 2000.  (Tr. 119-121).  Her date last insured for DIB is December 31, 2003.  (Tr. 26).  The application was denied initially on October 15, 2005 (Tr. 80-82) and on reconsideration on February 11, 2006.  (Tr. 85-87).  On March 9, 2006, Plaintiff requested an administrative hearing.  (Tr. 88).  On June 15, 2007, a hearing was held before Administrative Law Judge Martha H. Bower (the "ALJ") at which time Plaintiff, represented by counsel, a Vocational Expert ("VE") and Medical Expert ("ME") appeared and testified.  (Tr. 922-957).  The ALJ issued a decision unfavorable to Plaintiff on June 29, 2007.  (Tr. 64-74).  On July 5, 2007, Plaintiff filed a request for review.  (Tr. 107-108).  On August 6, 2007, Plaintiff submitted additional medical information to the Appeals Council from her treating psychiatrist and psychologist, which were obtained after the ALJ's decision.  (Tr. 109).  On July 30, 2009, the Appeals Council vacated the ALJ's decision and remanded for consideration of this new evidence.  (Tr. 75-79).

On March 9, 2010, the ALJ held a supplemental hearing at which time Plaintiff, represented by counsel, a VE and ME appeared and testified.  (Tr. 958-996).  On April 12, 2010, the ALJ again denied Plaintiff's claim, finding that Plaintiff failed to prove that she was disabled between October 30, 2000, her alleged onset date, and December 31, 2003, the last date she was insured for DIB.  (Tr. 21-33).  On June 10, 2010, Plaintiff filed a request for review.  (Tr. 18).  On February 11, 2011, the Appeals Council denied Plaintiff's request for review and therefore the ALJ's decision became final. (Tr. 12-14).  A timely appeal was then filed with this Court.

# II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 by failing to find that her mental impairments were "severe" within the meaning of 20 C.F.R. § 404.1520(c), and made unsupported findings as to her RFC and credibility.

The Commissioner disputes Plaintiff's claims and contends that the record supports the ALJ's findings and conclusion that Plaintiff was not disabled at any time during the relevant period, i.e., October 30, 2000 through December 31, 2003.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

## A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; <u>see also</u> <u>Conley v. Bowen</u>, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  <u>Carrillo Marin v. Sec'y of Health and Human Servs.</u>, 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through

four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.   Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276

F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms,

including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

    (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

    **2.**    **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-five years old on the date of the ALJ's decision.  (Tr. 218).  Plaintiff completed two years of college and attained an Associate's Degree in accounting (Tr. 146, 629) and worked in the relevant past as an accounts payable clerk.  (Tr. 141).  Plaintiff alleges disability due to chronic neck, back and jaw pain, depression and anxiety.  (Tr. 152).  Plaintiff worked as an accounts payable clerk from 1983 until her oldest son was born in 1998.  (Tr. 138, 141, 928). She alleges disability following an automobile accident which occurred on October 30, 2000.[1]  (Tr. 140, 926).  Her second son was born in 2002.  (Tr. 927).  Other than a very limited "Avon-type" home sales business, Plaintiff has not been gainfully employed since 1998.  (Tr. 184, 928-929).

On August 13, 1997, Dr. James Whalen, a psychiatrist, treated Plaintiff, who complained of anxiety and depression.  (Tr. 914).  Dr. Whalen noted that Plaintiff's anxiety seemed to be related,

---

[1] Plaintiff was also involved in automobile accidents in 2004 and 2006 that post-date her coverage for DIB. (Tr. 926).

in part, to her upcoming wedding and a fear of air travel in the near future.  Id.  He did not prescribe any medication.  Id.

On June 30, 1999, Plaintiff told Dr. Whalen, "I'm not doing that bad now."  (Tr. 910).  She expressed some frustration with the demands placed on her by her one year old son.  Id.  Dr. Whalen suggested she establish some time for herself each week.  Id.

On July 14, 1999, Plaintiff complained to Dr. Whalen of depression and anxiety.  (Tr. 909).  He called in a refill for her prescription medications.  Id.

On August 24, 1999, Plaintiff told Dr. Whalen, "I'm really better now."  (Tr. 908).  She was "doing well" and reported no episodes of aggravation or subjective anxiety.  Id.  She was "satisfied with her current level of functioning."  Id.  She was "alert, oriented and neat and clean in her presentation and without any significant problems currently."  Id.  She was "future focused and hopeful."  Id.

On October 3, 2005, Dr. Joseph F. Callaghan reviewed the evidence and opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently.  (Tr. 491).  She was also able to climb, stoop, kneel and crouch frequently, and balance and crawl occasionally.  (Tr. 492).

On December 1, 2005, Plaintiff presented to Lesley Landau, Ph.D. for an initial evaluation.  (Tr. 628).  Dr. Landau diagnosed depressive disorder, post-traumatic stress disorder, and history of panic attacks (without agoraphobia).  (Tr. 631).

On January 3, 2006, Dr. Amir Missaghian reviewed the evidence and affirmed Dr. Callaghan's opinions regarding Plaintiff's lifting, carrying, and other physical abilities.  (Tr. 497, 499).

At the first administrative hearing on June 15, 2007, Plaintiff testified that she cared for her two young children, ran errands, took a real estate course, and operated a small business booking parties on a part-time basis during the time she alleges she was disabled. (Tr. 927-930). She also testified on both occasions that she was hesitant to take pain killers because they impaired her ability to care for her children. (Tr. 943, 967). In addition, an impartial medical expert, Dr. Stephen Kaplan, a specialist in internal medicine and rheumatology, testified that objectively, Plaintiff had negative physical examinations and x-rays of the cervical spine. (Tr. 935).

At the second administrative hearing on March 9, 2010, impartial medical expert, Dr. John Ruggiano, a psychiatrist, stated that Plaintiff did not have a severe mental impairment as of her date last insured, December 31, 2003. (Tr. 983-984).

## A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4 finding that she was capable of performing her past relevant work as an accounts payable clerk. (Tr. 32). At Step 2, the ALJ found that Plaintiff's cervical degenerative disc disease, asthma and hypothyroidism were "severe" impairments as defined in 20 C.F.R. 404.1520(c). (Tr. 26). However, the ALJ determined that Plaintiff's mental impairments did not, either singly or in combination, cause more than minimal limitation in Plaintiff's ability to perform mental work activities during the relevant period and were thus "nonsevere." Id. As to RFC, the ALJ found that, through December 31, 2003, Plaintiff was able to perform light work with certain postural and environmental limitations. (Tr. 29). Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff was not disabled because she could perform her past relevant work as an accounts payable clerk. (Tr. 32).

**B.** **Plaintiff Has Shown No Error in the ALJ's Step 2 Determination That She Had No Severe Mental Impairments Prior to Her Date Last Insured**

As noted above, the insured period for this particular case is October 30, 2000 to December 31, 2003. Plaintiff filed her DIB application in 2005 and, as summarized above, much of the medical evidence of record is subsequent to December 31, 2003. After the ALJ's first denial (Tr. 64-74), the Appeals Council remanded the case with instructions to further evaluate Plaintiff's mental impairments during the relevant period, including to obtain supplemental evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments during such period. (Tr. 77-79). Pursuant to these instructions, a remand hearing was held before the ALJ at which a medical expert, Dr. John Ruggiano, a Board certified psychiatrist, testified as to the extent of Plaintiff's mental impairments prior to December 31, 2003. (Tr. 980-991). In her Step 2 denial as to Plaintiff's mental impairments (Tr. 27-29), the ALJ relied heavily on Dr. Ruggiano's unequivocal opinion that Plaintiff did not have a "severe" mental impairment as of December 31, 2003. (Tr. 28).

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In her Step 2 analysis, the ALJ thoroughly discussed each of

Plaintiff's impairments and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" mental impairment during the relevant period (October 30, 2000 to December 31, 2003). (Tr. 27-29). The ALJ did, however, find that three of Plaintiff's physical impairments were "severe" at Step 2. (Tr. 26-27).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe <u>medically determinable</u> physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c) (emphasis added). <u>See also</u> <u>Teves v. Astrue</u>, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time, <u>i.e.</u>, prior to December 31, 2003. <u>Id.</u> The ALJ found that Plaintiff did not meet that burden, and Plaintiff has shown no error in her finding.

The bottom line is that Plaintiff filed her DIB application nearly two years after the expiration of her insured status, and she has not shown that the administrative record supports a finding that her mental impairments significantly affected her ability to engage in basic work functions from October 30, 2000 to December 31, 2003. In fact, the record is clear that Dr. Ruggiano, a psychiatrist, reviewed the medical treatment records and opined unequivocally that Plaintiff did not have a "severe psychiatric disorder" through the end of 2003. (Tr. 983). He also testified as to the absence of any limitations in Plaintiff's activities of daily living, social

interactions, or concentration, persistence or pace, during the relevant period. (Tr. 990-991). Finally, in a treatment record dated August 3, 2000, Dr. Whalen, a treating psychiatrist, reported that Plaintiff was "currently stable" with a Global Assessment of Functioning ("GAF") rating of 80 and up to 85 in the past year reflecting "absent or minimal symptoms." (Tr. 902).[2]

Thus, Plaintiff has not established any legal basis for reversing the ALJ's Step 2 determination. While reasonable minds could differ as to the interpretation of this evidence, the issue is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1 (1st Cir. 1987)). Rather, the issue is whether the ALJ's Step 2 conclusions have adequate support in the record. Since they do, there is no basis upon which to reject them in this case.

### C.       Plaintiff Has Shown No Reversible Error in the ALJ's Credibility Determination

The ALJ did not find Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms to be completely credible. (Tr. 30). She concluded that Plaintiff's "extensive daily activities including caring for her young children, taking a real estate course and continuing to work part-time" were inconsistent with the alleged severity of her symptoms and disabling limitations. (Tr. 31).

---

[2] In her Memorandum (Document No. 8, pp. 16-17), Plaintiff points to treatment records from 2006 and 2007. (See Tr. 633-653). While these records reflect a worsening of symptoms, they significantly post-date the insured period in issue.

When supported by specific findings, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 193 (1st Cir. 1987). Here, the ALJ appropriately evaluated Plaintiff's credibility applying the factors contained in 20 C.F.R. § 404.1529 and adequately explained the bases for her conclusion. See also Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986).

For instance, Plaintiff described herself as a "homemaker" during the insured period. (Tr. 140). Her husband worked, and the record reflects that she was the primary caregiver for her two young sons during that time. (Tr. 927, 930-931). She testified that she did "everything from bathing" for the boys, "everything you do for a child, make their lunch, take them to school." (Tr. 931). Her oldest son was born in 1998 and was five and one-half years old as of December 31, 2003, while her youngest was born in 2002 and was one and one-half years old at the end of 2003. (Tr. 115). In a function report completed by Plaintiff on September 5, 2005, she summarized her daily activities in her own words as follows:

> I get up and get my child out of his crib. I make breakfast for both my sons and get my youngest dressed. I get my oldest son's lunch ready and get him on the bus for school. I get dressed, make beds, clean-up, do laundry and other household chores as well as going to the market and other errands. Somewhere in the mix I try to play with my son and read to him. Late afternoon I start making dinner and when my husband gets home we eat and then I clean-up. I bathe my sons and get them ready for bed. I usually finish my chores between 9 and 10:00 p.m.

(Tr. 158). This description contradicts much of Plaintiff's subsequent testimony in this case. The ALJ also accurately noted that Plaintiff took only "over-the-counter Tylenol" despite her significant

reported pain.  (Tr. 30).  Finally, the ALJ accurately and appropriately considered the fact that, despite her allegedly disabling symptoms, Plaintiff was able to operate a part-time catalog sales business from home and take a real estate course.  (Tr. 31).  Although there is conflicting evidence in the record on some points as to Plaintiff's activities of daily living and conflicting inferences which could be drawn from the evidence, Plaintiff has failed to establish any reversible error in the ALJ's credibility determination or other reason why her determination is not entitled to due administrative deference.

### D.  The ALJ Did Not Violate the Treating Physician Rule

Finally, Plaintiff contends that remand is warranted because the ALJ failed to properly weigh the opinions of certain treatment physicians.  Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").  The amount of weight to which a treating source opinion is entitled depends, in part, on the length of the treating relationship, the frequency of the examinations, consistency with the record and record support.  20 C.F.R. § 404.1527(d)(2)-(3).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).  See Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 2010 WL 2573086 at

**2-3 (1st Cir. 2010) (per curiam) (finding that the ALJ must give "supportable reasons" for rejecting a treating physician opinion).

In this case, Plaintiff argues that the ALJ did not properly evaluate the opinions of Dr. Whalen, a treating psychiatrist, and Dr. Landau, a treating psychologist. Dr. Landau started treating Plaintiff in late 2005 – nearly two years after the expiration of Plaintiff's insured status. (Tr. 628). The ALJ discussed and considered Dr. Landau's treatment records and opinion. (Tr. 27). The ALJ accurately pointed out the inconsistency between Dr. Landau's GAF rating of 65 in a treatment record (reflecting mild symptoms) (Tr. 631) and her assessment of Plaintiff's symptoms as moderate in an emotional impairment questionnaire subsequently solicited by Plaintiff's attorney. (Tr. 634). In addition, while Dr. Landau opined that such symptoms were totally disabling (Tr. 635), she found on examination that Plaintiff's affect was "appropriate to content," she was "alert and oriented x3 with no difficulty with attention, concentration, or memory," she was "pleasant and cooperative" with intact "intellectual functioning, judgment and insight," and she was "able to continue functioning at home, although she feels that her functioning is not optimal." (Tr. 630). Further, Dr. Landau's observations and opinions are of limited relevance in this case since they start in late 2005 and continue into 2007 which is well past the expiration of insured status. See Conner v. Barnhart, 443 F. Supp. 2d 131, 134 (D. Mass. 2006) (evidence concerning the period well after the claimant's date last insured was deemed "irrelevant"). In fact, Dr. Landau noted that Plaintiff first sought Dr. Landau's assistance in December 2005 to deal "with increasing feelings of stress, depression, and anxiety." (Tr. 630).

As to Dr. Whalen, he treated Plaintiff prior to the onset date (Ex. 46F – August 13, 1997 to August 3, 2000) and approaching/after the expiration of insured status (Ex. 29F – September 26,

2003 to January 6, 2004). The ALJ discussed these records and accurately points out that the pre-onset date records show only "minimal or transient symptoms" and the later 2003-2004 records showed that Plaintiff was "stable" on her medication and reported "she is feeling great" on Wellbutrin, an antidepressant. (Tr. 727, 730). Finally, the ALJ did not evaluate these records in a vacuum. The records were also reviewed by Dr. Ruggiano, a psychiatrist, who testified that he did not see any "severe impairment from a psychiatric viewpoint" during the relevant period. (Tr. 983-984).

Finally, Plaintiff takes issue with the ALJ's statement that Dr. Doberstein, a treating neurosurgeon, noted that Plaintiff's "neck disorder was 'doing very well' with a recommendation for 'no treatment' at that time." (Tr. 32 (quoting Ex. 10F)). Plaintiff argues that the ALJ's analysis in this regard is "incomplete and flawed." (Document No. 8, p. 13). Plaintiff is wrong. On January 9, 2004, Dr. Doberstein wrote to Dr. Meyers, a primary care physician, and noted that "since [Plaintiff] appears to be doing fairly well at the present time, we both have elected to follow her condition conservatively." (Tr. 598). On May 25, 2005, Dr. Doberstein examined Plaintiff and reported to Dr. Meyers that "given the fact that [she] is doing very well that we would recommend no treatment at this time other than her continuation of physical therapy exercising and anti-inflammatories if needed." (Tr. 593). The ALJ accurately summarized Dr. Doberstein's observations, and Plaintiff has shown no "flaw" or other error in the ALJ's evaluation of this medical evidence. Again, the ALJ did not evaluate this evidence in a vacuum. It was also reviewed by Dr. Callaghan who opined on October 3, 2005 that Plaintiff was capable of light work. (Tr. 490-

497).[3] The ALJ gave "great weight" to this opinion and relied upon it in formulating Plaintiff's RFC.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that Commissioner's Motion for an Order Affirming the Commissioner's Decision (Document No. 12) be GRANTED and that Plaintiff's Motion for Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 21, 2012

---

[3] Dr. Missaghian adopted and affirmed Dr. Callaghan's opinion on January 3, 2006.  (Tr. 497, 499).